UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| ERIC BENJAMIN FAULKNER, | ) | |
|---|---|---|
| Plaintiff | ) | CIVIL ACTION NO. 3:11-CV-250-KKC |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM, OPINION,** |
| | ) | **AND ORDER** |
| JOSEPH P MATTINA, | ) | |
| In his individual and official capacity, | ) | |
| And | ) | |
| BENJAMIN MCVAY, | ) | |
| In his individual and official capacity, | ) | |
| And | ) | |
| STERLING P. OWEN, IV. | ) | |
| In his official capacity, | ) | |
| And | ) | |
| CITY OF KNOXVILLE, TENNESSEE, | ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on Defendants Joseph P. Mattina's and Benjamin McVay's joint motion for summary judgment (DE 20) and Plaintiff Eric Benjamin Faulkner's motion to deny that motion. (DE 28). For the reasons stated below, both motions are granted in part and denied in part.

**I. BACKGROUND**

Defendants McVay and Mattina are officers at the Knoxville Police Department. (DE 1). On June 13, 2010 at approximately 3:00 A.M., Officers McVay and Mattina were conducting routine patrol duties in the Old City district of Knoxville, Tennessee. (DE 34). The officers observed an altercation near the entrance of a restaurant called Southbound, which had been airing "UFC Fight Night" for the entertainment of its patrons. (DE 34). The officers approached the scene, and began arresting two individuals involved in the fight on the sidewalk. (DE 34).

At least fifty to sixty disorderly individuals, who had previously been inside Southbound, were on the sidewalk near where the arrests were taking place. (DE 34). Plaintiff Faulkner was in the crowd. (DE 34). At some point, Officer McVay and an unknown male who had stopped to assist the officers ordered the crowd to back away from Officer McVay as he was arresting one of the offenders under arrest. (DE 34). From this point forward, the facts are in dispute.

Although the events were captured on video, the parties' versions of the events differ. (DE 23). Faulkner claims that he was walking away from the scene when Officer McVay arrested him for no apparent reason. (DE 1). Faulkner further claims that, for no reason, Officer McVay put pressure on Faulkner's throat and Officer Mattina delivered two knee strikes to his body. (DE 1). In contrast, the officers assert that Faulkner not only defied their orders to back away from the scene, but that he also walked behind Officer McVay and tossed his hands repeatedly. (DE 22). The officers further allege that when McVay tried to arrest Faulkner for disorderly conduct, Faulkner resisted arrest, which led Officer Mattina to assist by delivering a single knee strike to Faulkner's body. (DE 22).

The Officers assert that Faulkner was intoxicated, was possibly a danger to himself and others, and was behaving in a threatening manner.[1] (DE 20-1). The arrest report charged Faulkner with public intoxication and resisting arrest. (DE 34; DE 14-1). A General Sessions court found probable cause existed to arrest Faulkner on charges of public intoxication and resisting arrest. (DE 1, DE 34). The grand jury indicted Faulkner on the public intoxication charge, but not on the resisting arrest charge. (DE 1). Faulkner was tried on the public intoxication charge and was acquitted. (DE 1).

---

[1] The facts indicate that the officers originally intended to arrest Faulkner for disorderly conduct, in addition to the public intoxication charge. (DE 20-1).

2

In his complaint, Faulkner asserts several federal and state law claims against Officers McVay and Mattina, as well as claims against two other named defendants, who did not take part in the motions at issue. The officers have moved for summary judgment as to all of Faulkner's claims against them. (DE 20). In support of their summary judgment motion, the officers have offered the criminal trial testimony of both officers, an affidavit of Officer Mattina, the DVD evidence, the arrest report, and the indictment on the public intoxication charge. (DE 14-1, DE 20-1, DE 20-2, DE 23). Faulkner moved to deny the officers' summary judgment motion or, in the alternative, to stay the proceedings to permit discovery.[2] (DE 28). In support of Faulkner's motion and complaint, he has submitted his complaint, his affidavit generally affirming the complaint, evidence that a grand jury refused to indict him on the charge of resisting arrest, and the not guilty verdict at his criminal trial for public intoxication. (DE 1, DE 34-1, DE 34-2, DE 34-3).

**II. ANALYSIS**

Under Fed. R. Civ. P. 56, summary judgment is appropriate where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by

---

[2] As this Opinion and Order will further explain, the vast majority of Faulkner's claims are facially deficient and further discovery would be futile. To the extent that some of Faulkner's claims are not facially deficient, the Court notes that the few facts Faulkner does allege are blatantly contradicted by the DVD evidence, as well as a great deal of other evidence. Finally, Faulkner does not even provide his own affidavit making factual allegations to contradict the evidence presented by the officers. Faulkner's own affidavit would not require discovery. Faulkner's complaint also does not allege facts that would contradict the substantial amount of evidence indicating that the officers had probable cause to arrest Faulkner.

demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 322-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

**A. Federal Law Claims**

In count one of his complaint, Faulkner asserts several federal law claims against the officers under 42 U.S.C. Sections 1983, 1985, and 1988. (DE 1). Faulkner pleads that his First, Fourth, Eighth, and Fourteenth Amendment rights, as well as his due process and equal protection rights, were violated by the officers' actions. (DE 1).

To the extent Faulkner's claims against the officers rely on 42 U.S.C. § 1985, summary judgment is granted in favor of the officers, as Faulkner has failed to plead any facts to establish a § 1985 claim. 23 U.S.C. § 1985; *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999). To successfully assert an action under § 1985, a

4

> plaintiff must allege that the defendants (1) *conspired together*, (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws, (3) and committed an act in furtherance of the conspiracy, (4) which caused injury to person or property, or a deprivation of any right or privilege of a citizen of the United States, and (5) *and that the conspiracy was motivated by racial, or other class-based, invidiously discriminatory animus.*

*Bass*, 167 F.3d at 1050 (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971)) (emphasis added). Faulkner has not alleged that the officers conspired together to act, nor alleged that the officers' actions were based on racial or other class discrimination motives. To the extent Faulkner attempts to assert a claim under 42 U.S.C. § 1985 in count one of his complaint, summary judgment is granted in favor of the officers.

Further, to the extent that Faulkner's claims against the officers are based on Equal Protection, Due Process, the First Amendment, or the Eighth Amendment, summary judgment is also granted in favor of the officers. As an initial matter, when the use of force occurs during an arrest or the seizure of a plaintiff, "the plaintiff's claim is governed by the Fourth Amendment's reasonableness standard," not the Eighth Amendment or Due Process Clause. *Aldini v. Johnson*, 609 F.3d 858, 865 (6th Cir. 2010). The Eighth Amendment protects "convicted criminals serving their sentences" from excessive-force. *Id.* at 864. There is no assertion here that the officers ever used excessive force against Faulkner as a "convicted criminal" serving a sentence. (DE 1). Further, "the Due Process Clause[3] protects a pretrial detainee from the use of excessive force that amounts to punishment." *Id.* at 865. "A pre-trial detainee is one who has had only a judicial determination of probable cause as a prerequisite to the extended restraint of his liberty

---

[3] The Due Process Clause analysis generally applies only when a plaintiff's rights are not "governed by either the Fourth or the Eighth Amendment." *Aldini*, 609 F.3d at 865. Here, Faulkner's rights are clearly governed by the Fourth Amendment.

5

following arrest." *Id.* Faulkner fails to provide any facts indicating that the officers used excessive force against him while he was a pretrial detainee.

Faulkner also fails to allege any facts or law to support any claim under the First Amendment. He asserts that the officers' actions violated his right to be free from "fear, danger, and intimidation, as guaranteed by the First [Amendment] . . . ." (DE 1). While, the First Amendment may protect individuals who wish to oppose or challenge police action, Faulkner fails to assert any facts to demonstrate that he was engaged in First Amendment speech or that the officers' actions were adverse and in reaction to that speech, as required by such a claim. *See Fiordalisi v. Zubek*, 342 F. Supp. 2d 737, 744 (N.D. Ohio 2004). Finally, to the extent count one of his complaint asserts a claim against the officers under the Equal Protection Clause, summary judgment in favor of the officers is appropriate. Faulkner does not assert any facts to suggest a discriminatory purpose or a discriminatory effect, both of which are required to establish a claim under the Equal Protection Clause. *See Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000). Neither Faulkner's motion to deny the officers' motion for summary judgment, nor Faulkner's response to the officers' motion for summary judgment addresses the deficiencies of any of these claims. (DE 28, DE 33).

Faulkner also asserts, "The illegal arrest of Plaintiff on June 13, 2010 violated Plaintiff's clearly established constitutional rights to be free from unreasonable search, seizure, and arrest . . . ." (DE 1). This amounts to a wrongful arrest claim in violation of the Fourth Amendment under 42 U.S.C. § 1983. Summary judgment in favor of the officers is appropriate as to this claim, because there is no genuine issue of material fact. In other words, no reasonable jury could conclude that the officers lacked probable cause. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[S]ummary judgment will not lie if the dispute about a material fact is

6

"genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."); *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 547–48 (6th Cir. 2004). "[I]n order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause." *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002). "A police officer determines the existence of probable cause by examining the facts and circumstances within his knowledge that are sufficient to inform a prudent person, or one of reasonable caution, that the suspect has committed, is committing, or is about to commit an offense." *Id.* (internal citations omitted). Generally, the existence of probable cause in a § 1983 action is a jury question, "unless there is only one reasonable determination possible." *Id.* (internal citations omitted).

In the instant case, the only "reasonable determination" is that the officers had probable cause to arrest Faulkner. The officers have met their initial burden of proving that probable cause existed, and Faulkner has failed to provide any Rule fifty-six evidence beyond the mere pleadings and Faulkner's own affidavit generally affirming the pleading.[4] (DE 1, DE 34); *Celotex*, 477 U.S. at 324.

Instead, Faulkner asserts that since he was acquitted of the underlying charge, the officers therefore lacked probable cause. (DE 33; DE 34). He further asserts that the "General Sessions Court found probable cause . . . but the grand jury found that probable cause did not exist." (DE 33). First, "a valid arrest based upon then-existing probable cause is not vitiated if the suspect is later found innocent." *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir 1988). Second, both the General Sessions Court and the grand jury found probable cause existed as to the public

---

[4] It is important to note that Faulkner does not submit his own affidavit to say that he was not intoxicated or potentially a danger to himself or others on the night at issue. Faulkner's complaint also fails to make any factual allegations to dispute the substantial evidence indicating that the officers had probable cause to believe that Faulkner was intoxicated and potentially a danger to himself or others.

7

intoxication count. (DE 1). Moreover, while the grand jury did not indict Faulkner on the resisting arrest charge, the type of probable cause a Tennessee grand jury considers is a higher standard than probable cause to arrest. *See State v. Hudson*, 487 S.W.2d 672, 674 (Tenn. Crim. App. 1972); Tenn. Crim. Trial Practice § 11.14 (2012-13 ed.) (noting that grand jury probable cause is a higher burden). Finally, to constitutionally arrest a suspect, police only need probable cause to arrest as to *any* offense. *See Brown v. Fick*, 2011 WL 589210, at *5 (E.D. Mich. Feb. 10, 2011); *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). Even if the officers in this action did not have probable cause to arrest Faulkner on the resisting arrest charge, they did have probable cause to arrest Faulkner on the public intoxication charge and also on disorderly conduct. Probable cause as to either or both offenses would be sufficient to constitutionally arrest Faulkner.

The only evidence presented in this matter clearly establishes that the officers had probable cause to arrest Faulkner for the offense of public intoxication. A General Sessions Court and the grand jury determined that there was probable cause to arrest and to charge Faulkner with public intoxication. (DE 14-1; DE 34). The officers also submitted trial testimony of both officers, who testified under oath and subject to cross-examination, that Faulkner appeared intoxicated and potentially a danger to himself or others. (DE 20-1). Officer Mattina testified that Faulkner had "bloodshot eyes, he wreaked [sic] of alcohol, [and] he [Faulkner] admitted to drinking alcohol the entire night." (DE 20-1). The officers also submitted the arrest report that indicated that Faulkner appeared intoxicated and may have been a danger to himself and others. (DE 14-1). Under Tennessee law,

> (a) A person commits the offense of public intoxication who appears in a public place under the influence of a controlled substance, controlled substance analogue or any other intoxicating substance to the degree that:

8

> (1) The offender may be endangered;
> (2) There is endangerment to other persons or property; or
> (3) The offender unreasonably annoys people in the vicinity.

Tenn. Code. § 39-17-310(a). It is undisputed that the crowd was "disorderly" the night of the arrest, and many were "yelling, screaming, and were visibly intoxicated." (DE 34). Officer McVay testified that Faulkner was acting disorderly by throwing his hands around, yelling and screaming while Officer McVay attempted to arrest another suspect, and this is confirmed by the DVD evidence. (DE 20-1; DE 23)). Based on the abundance of evidence presented by the officers, no reasonable jury could conclude that the officers lacked probable cause to arrest Faulkner.

Further, Faulkner does not claim that he was not intoxicated,[5] nor does he provide any evidence that would conflict with the officers' evidence. Faulkner instead argues that because he was acquitted of the public intoxication charge, the officers' testimony is not credible. (DE 34). However, the standard of proof at a criminal trial is beyond a reasonable doubt, whereas the standard at issue here is probable cause. A jury's acquittal has little relevance to the issue of probable cause. Moreover, to the extent he claims the officers' testimony is not credible, the Court cannot weigh the credibility of evidence at the summary judgment stage, but ultimately must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

---

[5] In the record, the only time Faulkner "disputes" being intoxicated is to respond to the officers' statement of facts by saying, "This fact is in dispute [that Faulkner was intoxicated]. Though Defendants McVay and Mattina both asserted this fact at trial, the jury found them not to be credible and acquitted the Plaintiff of the offense of public intoxication." (DE 34). This statement by Faulkner is not a part of the complaint, is not a sworn affidavit, and does not even allege that Faulkner was not intoxicated, only that there was insufficient evidence to prove beyond a reasonable doubt that Faulkner was intoxicated and disorderly.

Additionally, to the extent Faulkner does make any allegations relating to probable cause, they are discredited. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *See Scott v. Harris*, 550 U.S. 372, 380-81 (2009). Faulkner's allegation that he merely "expressed his displeasure at the way Defendant McVay and the unknown male were treating the arrestee," (DE 1) and his allegation that "Plaintiff raised his arm once and was not arguing with the officer . . ." (DE 34) are blatantly contradicted by the video evidence, which shows Faulkner standing next to the officer and raising his arm at least three times. (DE 23). Faulkner provides no affidavits or other evidence to call into question the officers' trial testimony, the grand jury indictment, the General Sessions Court's finding of probable cause, or the arrest report, which all indicate that the officers had probable cause to believe that Faulkner had or was committing the offense of public intoxication. Finally, Faulkner's response to the officers' statement of material facts, alleging that facts are simply "in dispute" is alone not enough to defeat summary judgment. (DE 34). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48.

Moreover, no reasonable jury could find that the officers did not have probable cause to arrest Faulkner for disorderly conduct. Disorderly conduct under Tennessee law is committed by an individual who, "in a public place and with intent to cause public annoyance or alarm: (1) Engages in fighting or in violent or threatening behavior . . . ." Tenn. Code Ann. § 39-17-305. A Tennessee Court of Appeals upheld a criminal conviction for disorderly conduct when the defendant used profane and insulting language, clinched his fists, and pointed his finger at the

10

officer's face. *State v. Creasy*, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994). Despite Faulkner's allegation that he "raised his arm once and was not arguing with the officer," the DVD evidence submitted by the officers clearly shows Faulkner raising his arms at least three separate times. (DE 34, DE 23). The video also shows Faulkner raising his arm, looking at Officer McVay, and walking directly behind McVay, despite the orders to stay back. (DE 23). Considering the crowd of fifty to sixty disorderly individuals present on the night at issue, who were intoxicated and yelling, Faulkner's behavior could "clearly have been considered threatening." (DE 34). Further, Officer McVay testified that he "was afraid that [he] . . . would get attacked from behind." (DE 20-1); *See Creasy*, 885 S.W.2d at 832 (relying on officer testimony to support a guilty verdict on a disorderly conduct charge). Thus, the officers also had probable cause to arrest Faulkner for disorderly conduct. Summary judgment as to the § 1983 claim for unlawful arrest is granted.

Faulkner's final federal law claim against the officers is a § 1983 excessive force claim, alleging violations of his Fourth and Fourteenth Amendment rights. (DE 1). The officers argue that they are entitled to qualified immunity and thus, summary judgment on this claim. However, viewing the facts in the light most favorable to the non-moving party, the officers are not entitled to qualified immunity. To determine whether an officer is entitled to qualified immunity,

> First, a court must consider whether the facts, viewed in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right." If the answer is yes, the court must decide, "whether the right was clearly established. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation that he confronted."

*Solomon v. Auburn Hills Police Dept.*, 389 F.3d 167, 172 (6th Cir. 2004) (internal citations omitted).

The first inquiry is whether, under the facts alleged, a constitutional right could be found, and whether, viewing the facts in a light most favorable to Faulkner, there was a violation of that right. *Id.* Here, Faulkner asserts a claim that the officers used excessive force in effectuating the arrest. (DE 1). The Sixth Circuit "has recognized a person's constitutional right to be free from excessive force during an arrest . . . ." *Solomon*, 389 F.3d at 172 (internal citations omitted). Here, Faulkner alleges that Officer McVay shoved him up against a building, "and used his forearm to place pressure on Plaintiff's throat." (DE 1). Faulkner alleges that Officer Mattina delivered two knee strikes to Faulkner, and that he bled "profusely." (DE 1). The officers allege that Faulkner was resisting arrest and that Officer Mattina only used one knee jab that was necessary to neutralize Faulkner. The officers urge the Court to consider the DVD evidence to confirm their version of the facts, but "[f]acts that are not blatantly contradicted by the [] recording remain entitled to an interpretation most favorable to the non-moving party." *Coble v. City of White House, Tenn.*, 634 F.3d 865, 870 (6th Cir. 2011). Here, the DVD evidence, although somewhat in conflict with Faulkner's version of events, does not *blatantly contradict* Faulkner's version of events, specifically regarding the arrest. The DVD does contradict Faulkner's allegation that he was not arguing with police and did not toss his arms in the air on multiple occasions. (DE 23). However, the actual arrest of Faulkner is far less clear from the video. (DE 23). The images are blurry, and the video is shaky. (DE 23). The arrest takes place partially behind a newspaper distribution box and in the background of the unidentified male and original arrestee. (DE 23). Under the facts alleged, a reasonable jury could find a violation of Faulkner's Fourth Amendment right to be free from excessive force.

12

The second inquiry is whether the potential violation of Faulkner's constitutional right has been clearly established; in other words, whether the officers' actions were objectively reasonable in the situation at issue. *Solomon*, 389 F.3d at 173. In determining whether it would be clear to a reasonable officer that his actions were unlawful, courts commonly consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 172 (internal citations omitted). Reviewing the facts in the light most favorable to Faulkner, a reasonable jury could find that the officers' use of force was not objectively reasonable. *See McCaig v. Raber,* 515 Fed. Appx. 551, 555 (6th Cir. 2013). Public intoxication and disorderly conduct are not severe crimes, and under Faulkner's version of the facts, Faulkner was not resisting arrest. (DE 1). Faulkner further alleges that he was choked and knee jabbed twice. (DE 1). While it is undisputed that the crowd was disorderly, it is disputed that Faulkner posed a risk to the safety of the officers or others *after* Officer McVay began to arrest Faulkner. (DE 1, DE 34). These facts are in dispute, and the Court must consider the claim in the light most favorable to the non-moving party. A reasonable jury, reviewing the DVD evidence, could find that the officers' actions were consistent with Faulkner's version of events, and thus, could find that the officers' actions were not objectively reasonable. The Sixth Circuit has held that summary judgment on this issue of qualified immunity is not appropriate where there is a factual dispute and where video evidence is inconclusive. *Gill v. Locricchio*, No. 06-1659 2007 WL 579666 at *1 (6th Cir. Feb. 20, 2007) (denying review of a district court's denial of summary judgment on qualified immunity grounds where the facts were in dispute and the video evidence was inconclusive).

Finally, Faulkner's right to be free from excessive force was clearly established at the time of the incident. "Cases in this circuit clearly establish the right of people who pose no safety risk to the police to be free from gratuitous violence during arrest." *Shreve v. Jessamine Cnty. Fiscal Court*, 453 F.3d 681, 688 (6th Cir. 2006). Under Faulkner's version of the facts, he makes no admission that he resisted arrest and also asserts that Officer Mattina delivered two gratuitous knee strikes. The DVD evidence does not blatantly contradict Faulkner's factual allegations, and thus, summary judgment as to the excessive force claim based on qualified immunity is inappropriate.

**B. State Law Claims**

**i. False Arrest, False Imprisonment, and Malicious Prosecution**

Summary judgment is granted in favor of the officers as to Faulkner's Tennessee state law claims of false arrest, false imprisonment, and malicious prosecution against the officers, because as previously explained, the officers had probable cause to arrest Faulkner. False arrest and false imprisonment require proof of two elements: (1) the plaintiff was restrained against his will by a defendant, and (2) the restraint or detention was unlawful. *Cunningham v. Sisk*, No. 1:01-CV-182, 2003 WL 23471541 at *18 (E.D. Tenn. Dec. 4, 2003). This requires proof that a plaintiff was arrested without probable cause. *Id.* "[P]robable cause is [also] an essential element of an action for malicious prosecution." *Brown v. SCOA Indus., Inc.*, 741 S.W.2d 916, 918, 920 (Tenn. Ct. App. 1987). Since the court has previously found that no reasonable jury could conclude that the officers lacked probable cause, summary judgment is appropriate as to these claims.

### ii. Extreme and Outrageous Conduct, Intentional and Negligent Infliction of Physical Injury, and Emotional Distress

Under Tennessee Law, there are three essential elements to outrageous conduct, "(1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury." *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). Under Tennessee law, intentional infliction of emotional distress and outrageous conduct are the same cause of action. *Id.* In their motion for summary judgment, the officers only argue that the officers' actions were constitutional and therefore not outrageous. (DE 21). Because this Court has found that viewing the facts in the light most favorable to Faulkner, a jury could find that the officers used excessive force, the motion for summary judgment as to this claim is denied. The officers do not address the negligent infliction of emotional distress claim. (DE 21).

### iii. Tennessee Human Rights Act

Faulkner asserts a malicious harassment claim under the Tennessee Human Rights Act, §4-21-701. (DE 1). To assert a claim for malicious harassment, the "statute requires specific intent to intimidate based on civil rights motives." *Fromuth v. Metro. Gov't. of Nashville*, 158 F. Supp. 2d 787, 797–98 (M.D. Tenn. 2001); *Surber v. Cannon*, No. M1998-00928-COA-R3-CV, 2001 WL 120735 (Tenn. Ct. App. Feb. 14, 2001). In the instant case there is absolutely no evidence that the officers intended to intimidate Faulkner; Faulkner also failed to plead or provide any factual evidence that the alleged misconduct was based on Faulkner's race, creed, religion, sex, gender, or national origin. *Id.* Accordingly, summary judgment in favor of the officers is granted as to the Tennessee Human Rights claim.

15

Case 3:11-cv-00250-KC-CCS   Document 36   Filed 01/17/14   Page 15 of 17   PageID #: 244

### iv. Assault and Battery

The Sixth Circuit has held

> Where a plaintiff asserts a battery claim under Tennessee law that arises out of the same use of force as her § 1983 excessive-force claim, the analysis is the same for both causes of action. That is, "whether the analysis concerns whether an officer violated a plaintiff's constitutional rights by using excessive force or whether the analysis concerns whether an officer committed state-law battery by using force that was 'clearly excessive,' the same principles . . . are applied.

*Griffin v. Hardrick*, 604 F.3d 949, 956–57 (6th Cir. 2010) (internal citations omitted). Thus, because the Court declined to enter summary judgment as to Faulkner's § 1983 excessive force claim, summary judgment is also denied as to this claim.

### v. Official Misconduct

To the extent Faulkner claims an action for official misconduct under § 39-16-402 of the Tennessee Code, count 9 of Faulkner's complaint is dismissed in favor of the officers, as "official misconduct" under Tennessee law is a criminal charge, which may only "be brought by indictment, presentment, or criminal information." Tenn. Code § 39-16-402.

### vi. Violation of the Constitution of the State of Tennessee

Count 11 of Faulkner's complaint is also dismissed, because "there is no private right of action for damages based on alleged violations of the Tennessee Constitution." *Arbuckle v. City of Chattanooga*, 696 F. Supp. 2d 907, 931–32 (E.D. Tenn. 2010).

## III. CONCLUSION

Accordingly, for the above stated reasons, the Court **HEREBY ORDERS** as follows:

1. Defendant officers' motion for summary judgment (DE 20) is **GRANTED** as to Faulkner's claim arising under § 1985; his § 1983 claims arising under the First Amendment, the Eighth Amendment, the Equal Protection Clause, and the Due Process

16

Clause; and his state law claims for false arrest, false imprisonment, malicious prosecution, violations of the Tennessee Human Rights Act, official misconduct, and violation of the Tennessee Constitution.

2. Defendants' motion for summary judgment (DE 20) is otherwise **DENIED**;

3. Plaintiff motion to deny the Defendants' motion for summary judgment (DE 28) is **GRANTED** in part and **DENIED** in part consistent with the above; and

4. As a result of this Opinion and Order, Plaintiff's only remaining claims against the officers are his claim for excessive force under § 1983, his state law claims of assault and battery, and his state law claims of outrageous conduct and negligent infliction of emotional distress.

This 17th day of January 2014.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY